# Connecticut General Life Insurance Company
## *versus* McMurdy.

1. A printed application in a life insurance company was referred to in the policy and made a part thereof. The application was headed " Questions to be asked by the medical examiner, who will fully explain the questions and witness the answers and signature of the person examined." At the time of an examination the medical examiner made certain verbal explanations of the meaning of these printed questions. *Held*, that the applicant for insurance might properly infer, from what was stated in the caption to the questions, that in answering them he should do so with reference to the construction and explanation given at the time, and if the questions were explained and answered in good faith, according to the interpretation put upon them at the time by the representative of the company, there could be no objection to proving the facts and submitting them to the jury, notwithstanding the insured warranted the truth of his answers to the questions.

2. Where the questions of fact presented by an issue upon a first count are in some respects different from those involved in that upon the second count, and testimony that was strictly proper under the one might not have been admissible under the other, but no objection was made thereto, if the testimony was competent and relevant under either count, its admission generally was not such error as calls for reversal.

3. Where different issues are thus tried together, a general verdict is a determination of all the material issues involved, and if the difference in the issues is material, a special verdict on each issue should be demanded.

4. *It seems*, that where the damages are fixed by the pleadings, and the only question for the jury is whether the plaintiff is entitled to recover, and the verdict is a general one, the immateriality of one of several counts is no ground for reversal.

February 4th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of July Term 1878, No. 96.

Debt by Anna J. McMurdy against the Connecticut General Life Insurance Company, upon a policy of life insurance for $10,000, issued by the defendant company upon the life of John H. McMurdy, the husband of plaintiff.

The declaration consisted of two counts. The first alleged a contract of insurance, being the policy issued by the company, and averred compliance with all the conditions and limitations of said policy.

The second count averred a certain other contract of life insurance between the defendant and the insured, dated the 20th of March 1875, and consisting of a policy of life insurance, and a certain application therein referred to, and the contemporaneous explanation and agreement as to the meaning of certain portions of said application, and the answers thereto, more particularly detailed thereafter. Then followed a copy of the policy, with a copy of the application referred to therein, and the following aver-

ment of the contemporaneous explanation made by the defendant's medical examiner: "And whereas, among the questions in the said application to be propounded to the insured by the defendant's medical examiner (who, as is therein and thereby stated and agreed, was to fully explain the questions), were the following: (Form B.) 5. Have you ever had any of the following diseases? Answer (yes or no) opposite each. Fits or convulsions?　*　*　* 8. Have you ever had any malformation, serious illness, or personal injury, or undergone any surgical operation? If so, state fully its nature, durations and results.

"And whereas, the said John H. McMurdy was examined prior to and for the purpose of the contract of insurance, so as aforesaid entered into with him by the said defendant, by one William M. Orth, the medical examiner of the defendant at Lafayette, Indiana, and in the presence of the general agent for the defendant for the state of Indiana; and whereas, the foregoing questions were propounded in the presence of the said general agent to the said McMurdy by the said defendant, through its medical examiner; and whereas, in answer to one of the said questions, the said insured began to describe a wound he had received, and the said defendant, through its said medical examiner, thereupon asked the said insured some questions as to its character and location, and then and there stated that the injury which the insured was describing did not amount to anything, and was not worth describing, and explained, by its said medical examiner, and by the presence and assent of the said Latson, its general agent for the state of Indiana, to the said insured, that the meaning of the questions in the application were to obtain from the insured a statement of all matters that would leave a permanent effect or would influence the general health of the insured afterwards. And the said defendant, through its said general agent Latson, then and there further stated to the insured that what it, the said defendant, desired to know were all such matters as would influence the risk or chances for life of the insured, and that any temporary hurt could have no permanent effect.

"And whereas, the said insured had not had fits or convulsions, or any malformation, serious illness, personal injury, or any of the diseases mentioned in the said form B, nor undergone any surgical operation, any one of which diseases, malformations or operations, or any two or more combined, had left a permanent effect on his health; but all such diseases, malformations, surgical operations, &c., if any such there had been, produced only a temporary hurt, and left no permanent effect upon the insured, and did not influence his general health, or the risk or chances for life, &c."

To both counts the defendant pleaded the general issue, and the following:

1. A special plea, setting forth that the policy of insurance upon which suit was brought was issued upon an application signed by

[Connecticut General Life Ins. Co. *v.* McMurdy.]

the plaintiff and the insured, in which the latter declared and warranted that each of the answers made to certain questions thereinafter enumerated, were the full, complete and only answers made by the insured; that they were correctly recorded, and wholly and strictly true, and that no statements respecting the physical condition, health, personal or family history of the insured, other than those therein made, had been made to any agent, solicitor, examiner or other person on behalf of the defendant; that it was agreed in this application that it should form the basis and become a part of the contract between the parties, and including all its provisions and conditions; that it was further agreed therein that if any answers made by the insured contained any untrue or evasive statement or misrepresentation, or concealment of facts, the policy granted upon the application should be void; that the insured had, in answer to the question propounded to him, whether he had ever had fits or convulsions, answered "No," and that this answer was untrue, evasive and false, inasmuch as the insured had had fits or convulsions prior to making this answer and statement in the aforesaid applications, to wit, in certain months and years specified.

2. A second special plea, to precisely the same effect as the first, except that the false negation made by the insured was stated to be in reply to the question whether he had ever had any malformation, serious illness or personal injury, or undergone any surgical operation; in which case he was required to set forth its nature, duration and results. The answer was stated to have been false, inasmuch as the insured had had a serious illness or personal injury prior to the time of making said answer, viz., a blow upon the head with a club, and another severe blow upon the head, causing a fracture of the skull, and that a serious illness resulted therefrom.

To these pleas the plaintiff replied, denying that the insured had had fits or convulsions, serious illness or personal injuries, and issue was joined.

At the trial, before Briggs, J., the plaintiff offered in evidence the policy, dated March 20th 1875, and proved the death of the insured, June 5th 1875. The court, under objection, then admitted the report of Dr. Orth, the medical examiner of the company, as to the condition of the insured's health at the time of the application. (1st assignment of error.)

The court, also, under objection, admitted the answers to several questions put to Dr. Orth and to Mr. Latson, the agent of the company (the latter having been examined on a commission). From these answers it appeared that the insured was a man of extraordinary physical development, and seemed to be in perfect health; a man of correct habits, vigorous, well built, with perfect physique and stalwart frame. Said Mr. Latson: "He seemed to be a man of the most perfect health I ever knew."

[Connecticut General Life Ins. Co. *v.* McMurdy.]

The admission of these several answers constituted the 2d, 5th, 6th and 7th assignments of error.

The third assignment of error was the admission of the following interrogatory to Mr. Latson, and the answer thereto: "Did you ever have any conversation with McMurdy in relation to the insurance upon his life? If so, state what was the nature of the conversation; what gave rise to it; whether or not you represented the company in any capacity; and his question in regard to the policy and your answer thereto. Was any one else representing the company, or its interest, present at the time? If yea, state who it was, and what, if any, were his answers to McMurdy's question?"

Answer: "I had a conversation with John H. McMurdy in respect to insurance upon his life. I represented the Connecticut General Life Insurance Company as general agent for the state of Indiana. He, through me, made application for an insurance upon his life, and Dr. Orth was the examining physician for the company, and made the examination of John H. McMurdy for the insurance on his life, which he effected through me. During the examination I was present. In the form of application used at that time, most of the questions put to the applicant were for the examiner. Among the questions put by the examiner to the applicant was one to the effect whether he had ever had any serious illness or personal injury. In answer to this question, McMurdy began to describe a wound he had received in the leg while in the army. The doctor asked him some questions as to its character and location. After McMurdy's reply the doctor remarked that it amounted to nothing; that it was not worth mentioning, and then explained to him that the intention of the question was to call out anything that would leave a permanent effect or would influence his general health afterwards. I remarked that what we wanted to know was anything that would influence the risk or chance for life, and that any temporary hurt could have no permanent effect. McMurdy said, 'Well, answer "No" to that question then.'"

The foregoing interrogatory and answer were read under objection to Dr. Orth, who was then asked, on behalf of plaintiff, if such conversation had occurred, to which the doctor replied, "that it did, and that all of that conversation was in reference to the gunshot wound." (Fourth assignment.)

In the application for the policy, preceding the questions to be propounded in form B, was the following notice: "Questions to be asked by the medical examiner, who will fully explain the questions and witness the answers and signature of the person examined."

Two physicians testified, on behalf of defendant, that they had attended McMurdy in 1871, when he had received a severe personal injury from a blow on the head, in a fight in Lafayette, Indi-

ana; that a number of convulsions resulted therefrom; that he required two assistants to restrain him, and that he was kept under the influence of chloroform for forty-eight hours; the convulsions continued at intervals for about three days. The physicians never told McMurdy of the character of his attack or that he had had convulsions, but simply cautioned him to thereafter avoid becoming excited. It was also shown that the insured had been injured by a blow in the years 1871 and 1874, in Georgetown, Colorado, and that he again had convulsions. It was also in evidence that the explanation in regard to the gun-shot wound, was made after the insured had been examined, but before he had signed the application; that Latson, the agent, was present and the conversation was in his presence. The testimony of the insured's physician, during his last illness, was that he died of peritonitis, induced by exposure to the cold and wet while rowing on a lake.

The defendant submitted the following points, to which are appended the answers of the court:

1. The policy in suit was issued in consideration of an application, referred to in the policy, and made a part of the contract, which warranted that all the statements therein contained were true. In determining whether the answers to the questions put to the insured are true or false, it is not necessary to inquire whether the questions and answers are material to the risk or otherwise. If any of the answers are untrue or evasive, the policy is void, and the verdict must be for the defendant.

Ans. " In view of Latson's testimony, I decline this point, as it takes his testimony away from you, and his testimony must go to you."

2. If John H. McMurdy had fits or convulsions prior to the issue of the policy in suit, to wit, in March and April 1871, at Lafayette, Indiana, or in May and June 1871, at Georgetown, Colorado, or in the year 1874 at Georgetown, Colorado, and in the application he answered " No," when asked if he ever had fits or convulsions, then his answer was untrue and evasive, and the verdict must be for the defendant.

Ans. " This is so, unless you find that such answer was responsive to the explanation given by Latson touching the questions propounded in the examination. If you find that such answer was true, in view of Latson's explanations of what was comprehended in the printed questions, it will not prevent a verdict for the plaintiff."

Three other points of like tenor with the last were presented, to which the court answered: " Declined in view of Latson's testimony. In other words, for me to answer these points affirmatively would exclude Latson's testimony, and take it entirely away from you, and that I have no right to do. Whether the answers were true or false must be determined by you in view of Latson's testi-

mony and all the testimony before you. If you find they were true answers, then the verdict ought to be for the plaintiff. If you find they were untrue answers, then the verdict ought to be for the defendant.

In the general charge the court, inter alia, said :—

" I say to you, that justice requires that McMurdy, or his widow, who comes here as his legal representative, as the lawful claimant for this money, in view of the terms of the policy, should not receive your verdict if you are satisfied Mr. McMurdy was guilty of fraud in procuring the policy. * * * [But, if the agent of this company deceived McMurdy by the explanation that he made, either during the propounding of those propositions, or by any statement that he made afterwards before they were delivered or sent on their voyage to the company, then the plaintiff is entitled to protection."]

" I have already said to you there is enough in this case to justify this company in requiring the fullest explanation to be made before they pay. If their agent has, by his explanations, qualified away their right, of that which would have protected them, he is the wrongdoer. [If he said to Mr. McMurdy, ' If you have not been injured in such a way as to leave a permanent effect upon your health, we do not expect you to answer those questions categorically,' and Mr. McMurdy, in good faith, acting upon that explanation, I say in good faith, for, if it was a shield to ease his conscience, that otherwise would have made him hesitate, that is a fraud; but if, in good faith, he answered these questions in view of the interpretation that was presented to him by the agent, then, there is no fraud ; and, if such you find to be the case, you must read, in these interrogatories, the explanation made by the agent at the time, and then read his answer to the interrogatory in the light of such explanation.]

" If, then, the answer was false, under the warranty feature of the policy, it does not make any difference whether he knew it or not. The insurance company is entitled to protection ; for, when a man warrants an answer to be true, although he may not know of its falsity at the time, and he believes it to be true, he estops himself by this warranty.

" Where there is no warranty and a man states what he believes to be true, and it afterwards appears to be untrue, there being no fraud and no intention to defraud, he does not warrant it and is not estopped.

" You have heard the testimony of Latson, the general agent, and Dr. Orth's testimony ; and the doctor says that Latson witnessed the answers to the propositions. That shows that he was there ; that a colloquy took place under what is called a review, and that certain answers were made. [If those answers went to all that had been said before, then all that was said before must be understood

in view of those answers.] If it was the understanding of the parties that the explanation only had reference to the gun-shot wound, then it would be improper for you to carry the answer that was made beyond the single question, and it would have no effect whatever upon the other questions.

" [If the agent qualified the written questions and required the answer to come to these questions as qualified, then you must read in the questions themselves the explanation that was made at the time.]"

Verdict for plaintiff for $11,610, and after judgment thereon, defendant took this writ, the errors assigned being those above noted, the answers to points and the portions of the charge in brackets.

*M. Arnold* and *W. S. Price*, for plaintiff in error.—The answers of the insured, by the terms of the policy are warranties, and if they are untrue or evasive, or conceal the facts, the policy is void. We contend, therefore, that the contract excludes any such conversations or statements by the examiner or agent as are here alleged, and the company is not bound thereby, and that it was error to admit testimony as to whether the injuries which the insured had received, and the facts about which he did not disclose, had affected his subsequent health: Seybert *v.* Ætna Ins. Co., 4 Luz. Leg. Reg. 219 ; Smith *v.* Ins. Co., 12 Harris 320; Cooper *v.* Ins. Co., 14 Wright 299 ; Ryan *v.* World Mutual Ins. Co., 41 Conn. 168; Hartman *v.* Ins. Co., 9 Harris 466; Jeffries *v.* Life Ins. Co., 22 Wallace 47 ; Ætna Ins. Co. *v.* France, 91 U. S. 510. It having been shown that the insured had fits and convulsions and serious illness and personal injuries prior to the application, it was attempted to evade the breach of warranty contained in the concealment of these facts by showing a conversation in regard to a gun-shot wound.

*A. Sydney Biddle, D. G. Eshleman* and *James W. Paul*, for defendant in error.—The answers of the insured were true in response to the questions of the company, as propounded and explained by its agent the medical examiner. The question then is, admitting that the insured had had fits and serious personal injuries, were his answers to the questions asking these facts untrue, in view of the explanation authorized by the printed contract to be made to him (and admittedly made to him, the fact of the explanation being testified to by one of the defendants' witnesses, and corroborated by its general manager for the state of Indiana, being uncontradicted, and being found to be true by the verdict of the jury) ?

There were two issues tried in the case, whether the insured had convulsions, and if so, was his general health thereby affected at the time of the application ? There was no demand by the defendant, that the evidence should be limited to one particular issue

8 NORRIS—24

[Conecticut General Life Ins. Co. *v.* McMurdy.]

The verdict of the jury was a general verdict upon both counts of the declaration, so that it is immaterial whether the second issue was maintainable or not under the findings on the facts. Where the measure of damages is not apparent on the record, and lies wholly within the discretion of the jury, if a general verdict is given, which is equivalent to a verdict on each count, and one of the counts be bad, a new trial to assess the damages must be granted, because, although the jury has determined the defendant's liability to the plaintiff, *non constat* but that they have assessed the damages on one of the bad counts. But this is so only where the measure of damages is variable; as, for example, where the action is for negligence: if one of the counts is bad and there is nothing on the record to show the amount assessed on the good counts, a new trial to assess damages must be ordered. But the rule is exactly the opposite where the elements exist by which the amount of the verdict on the good counts is determinable. So, here, the verdict upon the first count, supposing the second totally irrelevant, was for the plaintiff, and the damages are fixed, being the amount of the policy, with interest thereon till the trial.

Mr. Justice STERRETT delivered the opinion of the court, June 2d 1879.

The questions of fact presented by the pleadings in this case justified the admission of the testimony complained of in the first seven assignments of error; and, in view of the testimony, properly before the jury, there was no error in the instructions of the court covered by the remaining assignments. The declaration, as originally filed, contained a single count in debt on the policy of insurance, averring in due form compliance with the terms and conditions thereof and the refusal of the company to pay the insurance money. Subsequently, an additional count was filed, based on a contract of life insurance between the defendant company and the insured, consisting of a policy and the application therein referred to, together with a contemporaneous explanation of the meaning of certain questions therein contained and the answers required to be made thereto. The questions referred to are contained in form B, entitled, " Questions to be asked by the medical examiner, who will fully explain the questions and witness the signature of the person examined." It was claimed that the authority of the medical examiner, to explain the questions to be answered by the applicant, was thus clearly recognised, and that the latter in answering might well be governed by such explanations as were made by the medical examiner. The defendant, without questioning the sufficiency of the second count, by demurrer or otherwise, pleaded *nil debet,* and two special pleas to both counts, and, in addition thereto, payment with leave to the first

count. The special pleas were respectively traversed and thereupon issue was joined.

The questions of fact, raised by the issues on the first count, were substantially whether the plaintiff and her husband had complied with all the terms and conditions of the policy, required of them or either of them; and, more especially, whether, prior to making the answers and statements referred to in the special pleas, the insured had been afflicted with fits and convulsions or had been seriously ill, or had received personal injuries from which serious illness had resulted.

The questions presented by the issue on the second count, in addition to some of those raised by the first, were in substance whether the company, through its medical examiner and by the presence and assent of its general agent, had made the contemporaneous explanations of the questions therein averred, to wit: that the meaning of the questions was to obtain from the insured a statement of all matters that would permanently affect his general health; that all the company desired to know were such matters as would influence the risk or chances of life of the insured, and that a temporary hurt could have no effect: whether, prior to making the application, the insured had been afflicted with serious illness or any of the diseases mentioned, or had sustained severe personal injury, any one or more of which had produced a permanent effect on his general health'; and whether it was true, as averred, that the diseases, injuries, &c., mentioned in the second count, had produced only a temporary effect, without impairing his general health or diminishing his chances for life.

It will thus be seen that the questions of fact presented by the issue upon the first are in some respects different from those involved in that upon the second count. Hence, testimony that was strictly proper under the one might not have been admissible under the other, if it had been specially objected to on that ground; but, no such objection was made, and, if the testimony was competent and relevant under either count, its admission generally was not such error as calls for reversal. The court was not asked to distinguish between the two counts or instruct the jury to return a separate verdict as to each. In case the plaintiff under the evidence was entitled to recover, there was no room for controversy as to the amount. It was the same under each count,—the sum named in the policy, with interest. If there was a recovery at all, it could be neither more nor less.

The testimony, tending to prove the terms of the contract as laid in the second count, was introduced and submitted to the jury, who, by their general verdict on both counts, found in effect that all the material averments were true. If the contract of insurance, as claimed by the plaintiff below, was thus established, it was certainly competent and material, under the pleadings, to prove

that at the time of making the contract the health of the insured had not been permanently affected as a life risk by any of the means complained of ; that the effect of the injuries, sickness, &c., on his general health had been only temporary ; that neither singly nor together had they produced any permanent effect on his health or rendered his insurable risk less valuable to the company. This of course involved an inquiry into his general health.  Much of the testimony, the admission of which is complained of, was of this character, and it appears to us that it was clearly competent under the issues presented by the pleadings.  The report of Dr. Orth, the medical examiner of the company, as well as his testimony, was competent and relevant, at least under the second count.  He testified that at the time he made the examination for the company, the health of the insured was good; that he was a man of correct habits so far as he knew, and his general appearance was good; that he met him every day and " considered him a healthy man."  To the same effect, but more pointed and specific, was the testimony of Mr. Latson.  His acquaintance with the insured commenced in 1866, and he was present when Dr. Orth made the examination for the company.  Speaking of Mr. McMurdy's health during the time he was acquainted with him, he says, he " was a man of extraordinary physical development and seemed to be in perfect health.  He was vigorous, well-built, with perfect physique and stalwart frame; he seemed to be a man of the most perfect health I ever knew."  This and other testimony of like nature had a direct and important bearing on one or more of the questions to be passed on by the jury; and without specially noticing the several assignments of error, in relation to the admission of testimony, it is sufficient to say that neither of them is sustained.

The testimony being properly before the jury, it was of course the province of the court to instruct them as to its bearing and effect in case they found the facts to be as claimed by the plaintiff.  In view of the issues of fact presented by the pleadings there was no material error in the instructions given to the jury either in the general charge or in answer to points submitted.  In referring to the testimony, as to what occurred at the time the application for insurance was being prepared and the explanation then made of the purpose and meaning of certain questions, the learned judge said to the jury : " if this explanation satisfies you that he acted in good faith, in answering these questions ; was guilty of no fraud, but answered them truly as he believed them to be in view of the explanations made at the time by the company's agent, then his answers are not to be held as estopping recovery ; simply because viewing them in their limited aspect as to the printed questions would be unfair to the plaintiff, if, in point of fact, the answers were superinduced by an explanation which the agent made at the time."

[Connecticut General Life Ins. Co. v. McMurdy.]

Again, in portions of the charge embraced in the eleventh and twelfth assignments of error, the jury were instructed that if the insured was misled by the statement or explanation of the agent, the plaintiff was entitled to protection against a strictly literal construction of the printed questions and answers thereto. The learned judge said, "if in good faith the insured answered these questions in view of the interpretation that was presented to him by the agent, then, gentlemen, there is no fraud; and if such you find to be the case, you must read in these interrogatories the explanation made by the agent at the time, and then read his answers to the interrogatories in the light of such explanations." In other portions of the charge and answers to points submitted the same views are expressed in different language, so that the jury could not fail to understand that, in connection with the answers of the applicant, it was their duty to consider not only the questions as they appeared in the printed form, but also the explanations and construction given to them by the company's agent at the time. In view of the testimony before the jury there was no error in this. Indeed the learned judge could not have withheld the instructions complained of without ignoring the force of clear and uncontradicted testimony.

We have not overlooked the fact, so strongly insisted on by the learned counsel for the company, that the insured warranted the truth of his statements and answers to questions contained in the application. This would possess all the controlling effect claimed for it, if the company had not authorized its agent to construe and explain the questions. This authority as we have seen is clearly expressed on the face of the application. In fact it is made the duty of the medical examiner, not only to propound, but also to "fully explain" the questions contained in form B. Surely the object of this could not have been to deceive and entrap the insured. Any intelligent applicant for insurance would infer from what is stated in the caption to the questions that, in answering them, he should do so with reference to the construction and explanation given at the time. If the questions were explained and answered in good faith according to the interpretation put upon them by the representative of the company at the time, there could be no reasonable objection to proving the facts and submitting them to the jury as was done in this case. If the court had excluded the testimony complained of, and held the plaintiff below to a strict construction of a warranty according to the letter of the questions as they appear in the printed form, a grave error would have been committed. As it was we discover no error in the record that would justify a reversal of the judgment.

Judgment affirmed.